not expected to pay them, and that he only wanted them renewed so as to keep track of the amounts expended. This evidence was clearly incompetent. Declarations of a former owner of negotiable paper or chose in action are not admissible against the holder or assignee to affect his title or rights. Merkle v. Beidleman, 165 N. Y. 21, 58 N. E. 757; Dodge v. Freedman's Savings & Trust Co., 93 U. S. 379, 23 L. Ed. 920; German-American Bank v. Slade, 15 Misc. Rep. 287, 36 N. Y. Supp. 983. While under some circumstances this error might seem to be harmless, yet in the present case there was a very delicate question of fact for the court to decide, and we cannot say that this evidence did no harm. Upon the defendants' own showing, there might be very grave doubt that the notes were given under the circumstances claimed. They were renewed in negotiable form every three months for a series of years, with interest. If they were given as a mere memoranda, these renewals would seem useless, and bear very strongly against their contention; and the declarations of Smith, erroneously received in evidence, may possibly have turned the scale in defendants' favor.

The judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.

---

(41 Misc. Rep. 399.)

### RIORDAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court of New York, Trial Term. September, 1903.)

1. RAILROADS—INJURY TO TRESPASSER.
    Where a boy, after gathering coal in the neighborhood, on railroad tracks, in a bag, while attempting to cross the tracks in the freightyard was struck by a train which unexpectedly backed down upon him, he was a trespasser, entitled only to protection from wanton or willful injury, and cannot recover.

Action by John J. Riordan, by Daniel J. Riordan, his guardian ad litem, against the New York Central & Hudson River Railroad Company. Motion to set aside verdict for plaintiff. Granted.

L. Steckler, for plaintiff.
H. E. Kinney, for defendant.

GREENBAUM, J. The verdict of the jury in favor of the plaintiff cannot stand, unless the proofs submitted in plaintiff's behalf would warrant the jury in finding, as matters of fact, first, the notorious existence at the time of the accident of a public road or pathway leading from the ferry across defendant's tracks, running diagonally in a southwesterly direction to the foot of a public staircase built along the side of a hill; and, secondly, that plaintiff, while crossing this pathway, was struck by defendant's train. The testimony shows beyond dispute that near the place where the accident occurred a ferry was operated by the defendant on the Hudson river, to the east of defendant's railroad; that near the ferry landing a well-recognized

¶ 1. See Railroads, vol. 41, Cent. Dig. §§ 1238, 1239.

plank road crossed the tracks, running approximately east and west, which was used by vehicles and pedestrians in going to and coming from the ferry; that this road was nearly opposite a private staircase known as the "Pavilion Staircase," and which was adjacent to a building known as the "Hoffman House," on the southerly side of the building; that the Hoffman House was located west of the railroad tracks, and that the planked road across the tracks continued around the northerly side of the Hoffman House, so that a person, by driving or walking along this road, which was up hill, could reach West New York or Union Hill. It also appears that at a distance of about 100 feet south of the pavilion staircase, and also to the west of the railroad, there was a public staircase along the side of the hill, which was used by some pedestrians in going to the top of the hill, instead of the planked road, which has already been described. The foot of this public staircase was approached from the ferry in one of two ways— either by using the planked road in crossing the tracks, and then walking in a southerly direction along a road known as the "River Road," which paralleled the defendant's tracks to the west, or by avoiding the planked road and crossing the tracks diagonally from the ferry along a beaten earth road in a southwesterly direction. This diagonal road was evidently a short cut between the ferry and the public staircase. The proof that a considerable portion of the ferry traveling public used this diagonal pathway or road was meager. It was not made to appear to what extent or during what period of time this path had been used. It would seem to have been a comparatively simple matter to have produced reputable witnesses as to these facts, and yet the only witnesses called by the plaintiff were the plaintiff's father and one Bindernagel, the son of the proprietor of the Hoffman House.

But assuming that plaintiff made out a prima facie case as to a well-known public use of the diagonal earth-beaten roadway, has plaintiff proved that he met with his injury while walking over this road? The plaintiff, at the time of the accident, was 9 years of age. After his return home from school, shortly after 3 o'clock, he picked up a bag and gathered coal somewhere in the vicinity of defendant's tracks and ferry, and, with the bag partially filled with coal and thrown across a shoulder, he was returning homeward, as is claimed, walking across the tracks, along the diagonal, beaten road, toward the foot of the public staircase, when he was struck by one of the defendant's trains, which had been standing still on one of the tracks over which he was then in the act of crossing, and which, unexpectedly and without any warning, was backed down in a southerly direction toward him before he had an opportunity to get off the track, injuring him to such an extent that the amputation of his right leg, between the hip and the knee, became necessary. Plaintiff produced no eyewitness of the occurrence. His father testified that within a comparatively short time after the accident he found blood and human tissue on the rails at a point opposite the public staircase. Plaintiff's only other witness was Bindernagel, who testified that at the time of the accident he was standing in front of the Hoffman House; that he had noticed the train when it was standing in front

of his house, with the engine headed north; .that he saw the train back down in a southerly direction, and stop after it had proceeded a short distance; that he then saw men running toward the rear end of the train, and that he learned that a boy had been run over; and that he went to the scene of the mishap, and saw where the boy lay. This witness repeatedly stated that the distance between the ·northerly or pavilion staircase, as it was termed (which he had testified was opposite the planked cross-road), and the southerly or public staircase, was about 100 feet, and that the distance from the planked cross-road to where the boy was injured was about 175 feet. According to this testimony, the boy must have been struck at some point about 75 feet south of the southerly or public staircase, and he could not at that moment have been using the diagonal beaten path. Plaintiff's counsel argues that the witness Bindernagel was mistaken in his estimate of distances, and that an examination of the survey offered in evidence by the defendant shows that the southerly staircase was about 175 feet from the point where Bindernagel was standing when the train was in front of him. It may be, and undoubtedly it is the fact, that Bindernagel's estimate of distances was incorrect, as it is a matter of common experience that eye measurements are usually unreliable. But whether the distance from the planked crossing to the public staircase was 100 or 175 feet, the fact is that Bindernagel placed the scene of the accident at a point considerably below the staircase, and, from his viewpoint, equal to three-fourths of the distance between the planked crossing and the southerly public staircase. That there can be no mistake as to the meaning and effect that must be given to Bindernagel's testimony on this point, I quote him verbatim from the stenographer's minutes:

"By Plaintiff's Counsel: Q. How far do you think, if you know or have any recollection about. it (referring to the distance between the spot where he saw blood on the rail and the 'planked crossing)? A. About 175 feet, I should judge. * * * Q. Now, how far is the public staircase from the cross-walk or cross-planking? A. About 100 feet. Q. South or north? A. South. * * * By Mr. Paulding: Q. That (referring to the diagonal earth-beaten pathway ) led to the foot of the staircase, 100 feet below the crossing? A. Yes, sir. Q. And the blood on the rails was 175 feet or more below the crossing? A. About 175 feet. By the Court: Q. Below what? A. Below the crossing. By Plaintiff's Counsel: Q. Are we correct in understanding you to say that there was about 100 feet between the two staircases? A. About 100 feet between the two staircases. .Q. Is that right— Shown on Exhibit A (plaintiff's exhibit) there is about 100 feet. Is that right? A. Just about. Yes, sir. Q. Now, the planked crossing was about opposite the northerly staircase. Is that true? A. About opposite the staircase here. Q. Was it about opposite the northerly staircase? A. Well, that is the same thing. About opposite the saloon. Q. And the southerly staircase was 100 feet to the south of that? A. Yes, 'sir."

In view of the consistent testimony of the only disinterested witness produced by the plaintiff that the scene of the accident was about 75 feet below the southerly staircase, it is apparent that an error of the witness in the matter of absolute measurements is of little consequence. A corroboration of the fact that the accident occurred at some distance south of the southerly staircase, and therefore of the diagonal beaten road, is furnished by the testimony of Bindernagel

and the plaintiff himself. The former testified that in front of the Hoffman House there had been two tracks, and that at a point about 25 or 30 feet below (south of) the staircase there would begin to be more than two tracks. The latter testified that at the place where he was injured there were "more than two tracks," and that there was a switch about 14 or 15 feet from the place of the accident. We have thus only the testimony of plaintiff's father, an interested witness, that he found blood after the accident on the track at a point opposite the staircase, arrayed against that of plaintiff's disinterested witness Bindernagel, who was on the ground when the accident occurred, and that of plaintiff, who stated that there were more than two tracks at the point where he was struck.

Under these circumstances, I do not think that there was sufficient testimony to justify the finding of the jury that plaintiff was injured at a crossing. On the contrary, it appears to me from the testimony presented on plaintiff's behalf that plaintiff was a trespasser, and only entitled "to be protected from wanton or willful injury." Boyle v. N. Y., L. E. & W. R. Co., 39 Hun, 171, affirmed 115 N. Y. 636, 21 N. E. 724. Indeed, I have grave doubts, too, if the plaintiff, who was not a ferry passenger, was entitled to the rights of a traveler coming from or going to the ferry by way of the diagonal road, assuming that this road was used by persons crossing the ferry to such an extent that the defendant was chargeable with its public use. The road existed only between the ferry and the staircase, and, so far as plaintiff's proof shows, was only used by ferry passengers, so that plaintiff has not even shown himself to be a licensee. The accident happened upon defendant's premises, which were used as a freightyard, and the testimony shows that plaintiff was a trespasser. Under the authorities of this state, recently recognized in Lagerman v. N. Y. C. & H. R. R. Co., 53 App. Div. 283, 65 N. Y. Supp. 764, and Gunther v. N. Y. C. & H. R. R. Co., 81 App. Div. 606, 613, 81 N. Y. Supp. 395, I do not see how a recovery, with the proof here submitted, can be maintained against the defendant. I am therefore constrained to grant the motion to set aside the verdict.

Motion granted.